**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**CAROLINE D. OCASIO,**

**Plaintiff,**

**v.** **CASE NO:**

**MEADOW BURKE, LLC d/b/a LEVIAT,**

**Defendant.**
______________________________________/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, CAROLINE D. OCASIO, (hereinafter "Plaintiff" or "Ms. Ocasio"), by and through the undersigned counsel, hereby sues Defendant, MEADOW BURKE, LLC d/b/a LEVIAT (hereinafter "Defendant," "Leviat," or "Company") and alleges:

## INTRODUCTION

1. The Plaintiff brings this action against Defendant, her former employer, seeking to recover damages for unlawful discrimination based on disability, age, and sex, and for retaliation, in violation of the Americans with Disabilities Act of 1990, as amended ("ADA"), 42 U.S.C. § 12101 et seq., the Age Discrimination in Employment Act of 1967, as amended ("ADEA"), 29

U.S.C. § 621 et seq., Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII") and its implementing Regulations, and the Florida Civil Rights Act of 1992, as amended, § 760.10 et seq. ("FCRA"). In addition, Plaintiff seeks to redress violations by Defendant of the Family and Medical Leave Act of 1993, as amended, 29 U.S.C. § 2601 et seq. ("FMLA").

2. As further set forth below, Plaintiff alleges that Defendant unlawfully discriminated against her, altered the terms, conditions, and privileges of her employment because of her disability, age, and sex, and retaliated against her in violation of her rights under the ADA, the ADEA, Title VII, and the FCRA. Plaintiff further alleges that Defendant unlawfully interfered with the exercise of Plaintiff's FMLA rights and unlawfully retaliated against her for exercising those rights in violation of the FMLA.

3. As a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered actual damages: loss of income, loss of opportunity for future income, loss of benefits, and loss of future pay increases. In addition, she has suffered and continues to suffer loss of her professional and personal reputation, emotional distress, mental anguish, embarrassment, and humiliation.

4. Plaintiff has incurred costs and attorney's fees in bringing this matter.

## JURISDICTION AND VENUE

5. This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 2000e-5. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) and the principles of pendent jurisdiction.

6. This Court has jurisdiction to grant declaratory relief, declare the rights and legal relations of the parties, and order further relief pursuant to 28 U.S.C. §§ 2201 and 2202.

7. Venue is proper in the United States District Court for the Middle District of Florida, Tampa Division, pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims herein occurred within this District and Division and pursuant to 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices out of which Plaintiff's claims herein arise were committed within this District and Division. All facts and circumstances arising from this dispute took place in Hillsborough County, Florida.

**PARTIES**

8. Plaintiff is CAROLINE D. OCASIO, a female who was 57 years old at the time of her termination and who suffers from a cardiac condition that substantially limits one or more major life activities, including cardiovascular and circulatory function, and that requires ongoing medical treatment and medication.

9. Plaintiff is a member of a class protected against discrimination and retaliation based on her disability, age, and sex under the ADA, the ADEA, Title VII, and the FCRA.

10. During the period from on or about January 31, 2023, until February 22, 2024, Defendant employed Plaintiff as its Director of Human Resources, North America.

11. At all times material herein, Plaintiff met the definitions of “employee” and “eligible employee” under all applicable federal and state statutes.

12. At all times material herein, Plaintiff was an employee entitled to protection as defined by the ADA, the ADEA, Title VII, the FCRA, and the FMLA.

13. The Defendant, MEADOW BURKE, LLC d/b/a LEVIAT, is a

Limited Liability Company with a principal place of business located at 6467 S. Falkenburg Road, Riverview, FL 33578, Hillsborough County, Florida.

14. At all times material herein, Defendant regularly conducted, and continues to conduct, business throughout Hillsborough County, Florida, and employed 500 or more employees across nine locations in North America.

15. At all times material herein, Defendant met, and continues to meet, the definitions of "employer" under all applicable federal and state statutes including, but not limited to, the ADA, the ADEA, Title VII, the FCRA, and the FMLA.

16. Accordingly, Defendant is liable under the ADA, the ADEA, Title VII, and the FCRA for the unlawful discrimination and retaliation to which it subjected Plaintiff. Defendant is also liable under the FMLA for unlawfully interfering with Plaintiff's rights and for retaliating against Plaintiff in violation of the FMLA as more fully alleged herein.

## ADMINISTRATIVE PREREQUISITES

17. Plaintiff has properly exhausted all administrative prerequisites prior to filing the instant lawsuit.

18. On March 12, 2024, Plaintiff timely dual filed a Charge of

Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR") against Defendant alleging, among other things, disability discrimination, age discrimination, sex discrimination, and retaliation.

19. On July 29, 2026, the EEOC issued Plaintiff a Notice of Right to Sue in reference to her Charge of Discrimination (EEOC Charge No. 511-2024-01837) against Defendant.

20. This action is being filed within ninety (90) days of Plaintiff's receipt of the Notice of Right to Sue from the EEOC.

21. More than one hundred eighty (180) days have elapsed since the filing of Plaintiff's Charge of Discrimination and the FCHR has not conciliated or determined whether there is reasonable cause. Therefore, Plaintiff is entitled to bring her FCRA claims in the instant civil action against Defendant and jurisdiction is proper in this Court. See §§ 760.11(4)(a) and 760.11(8), Florida Statutes.

22. All conditions precedent to bringing this action have been performed or have occurred.

## GENERAL ALLEGATIONS

23. Leviat is a global company operating within the CRH group of

companies. Plaintiff joined Leviat on or about January 31, 2023, as its Director of Human Resources, North America, a role in which she oversaw human resources for nine locations and more than 500 employees. Plaintiff was a rehire within the CRH group, having previously worked for Oldcastle APG, a sister company of Leviat.

24. Plaintiff suffers from a cardiac condition. Her condition substantially limits one or more major life activities, including cardiovascular and circulatory function, and requires ongoing medical treatment and medication.

25. On or about July 11, 2023, Plaintiff was hospitalized for a serious medical condition and was discharged on or about July 13, 2023.

26. On or about January 30, 2024, Plaintiff experienced cardiac symptoms at work, including chest tightness, neck pain, tingling in her left arm, difficulty speaking, and high blood pressure. Plaintiff went to the emergency room and was admitted. She was released on or about February 1, 2024, and returned to work on or about February 6, 2024. When Plaintiff returned to work, her supervisor, Brad Nesset, made a joking remark about her heart condition.

27. Beginning in or about March 2023, Leviat experienced a

financial downturn and undertook a series of reductions in force ("RIFs") affecting employees at multiple locations. As Director of Human Resources, Plaintiff was tasked with helping to carry out the RIFs.

28. Brad Nesset, Defendant's President, North America, determined the dollar amounts to be cut, solicited names from the leadership team, and made the final selection decisions for the RIFs. Chris Leonard, Defendant's Vice President of Operations, was involved in RIF decisions at the plant level.

29. Throughout the RIF process, Plaintiff observed that individuals selected for layoff included a disproportionate number of older workers, employees with disabilities, female employees, and employees with active or anticipated medical leave, including employees with active FMLA claims and workers' compensation claims, even when those employees had no performance issues. Plaintiff also observed instances in which less-qualified, male, non-disabled, or younger employees with performance issues were retained. Plaintiff did not contend that every retained employee was younger; for example, Engineering Manager Ernie Garcia, who was older, was retained after concerns were raised that he might share confidential information with a competitor, and Mr. Garcia was a close friend of Brad

Nesset.

30. Plaintiff further observed a specific pattern involving the Office Manager/HR Representative positions in Boone, Iowa, Hazleton, Pennsylvania, and Canby, Oregon. After those positions were eliminated, Defendant created or used a new Production Admin role with substantially similar responsibilities, except for payroll duties. In Boone, Kristin Mitchell, an Office Manager/HR Representative who had active FMLA leave, was brought back shortly after the layoff into a new role at the same rate of pay after Brad Nesset instructed the plant manager to bring her back.

31. By way of example, on or about November 27, 2023, Brad Nesset directed that a new Production Admin role be created in Boone, Iowa, Hazleton, Pennsylvania, and Canby, Oregon following the elimination of Office Manager/HR Representative positions at those locations. The new role carried duties similar to the eliminated positions, with the exception of payroll duties.

32. Jessie Endress, the Office Manager/HR Representative in Canby, Oregon, was a high-potential employee who began intermittent FMLA leave in June 2023. Before beginning FMLA leave, Ms. Endress had been nominated to attend the UP Forum event in Texas sponsored by CRH,

an event for which high-potential employees were selected. After her plant manager, Leo Castellano, complained to Chris Leonard and Brad Nesset that Ms. Endress was taking too much time off, Mr. Nesset stated that he wanted Ms. Endress gone. Defendant eliminated her position, and she was laid off in the November 2023 RIF.

33. Plaintiff observed a similar issue involving Destiny Dunrud, who had active FMLA leave. Leo Castellano complained about Ms. Dunrud's absences, and Ms. Dunrud was selected for the September 2023 RIF because of what was characterized as excessive absences. Ms. Dunrud had held a Production Admin role of the type later developed or used in connection with the Office Manager/HR Representative restructuring. Maria Lopez, the Office Manager/HR Representative in Hazleton, Pennsylvania, was experiencing medical issues and intended to apply for FMLA leave in December 2023. Defendant laid Ms. Lopez off in the November 2023 RIF, the week before Thanksgiving.

34. Plaintiff was also informed by Araceli Reyes, a Human Resources Generalist, that Chris Leonard had selected two individuals for layoff because of pending workers' compensation claims without first discussing those selections with Human Resources. Plaintiff learned of the

stated basis for those selections after the discussion concerning the affected employee or employees had occurred.

35. On more than one occasion, Plaintiff opposed what she reasonably believed to be unlawful conduct. Plaintiff told Brad Nesset that Defendant needed to be mindful of the employees selected for the RIFs and that employees could not lawfully be targeted because of age, disability, sex, protected medical leave, or similar protected circumstances. As part of the RIF process, after a selection list was completed, Plaintiff sent it to Connor Dugosh in Defendant's legal department and prepared a spreadsheet reflecting, among other information, the selected employees' ages, tenure, and stated reasons for selection. Defendant's legal department then prepared severance agreements and the related Older Workers Benefit Protection Act disclosures.

36. Plaintiff also reported to Defendant's Vice President of Human Resources her concern that three Office Manager/HR Representatives were being selected for layoff in circumstances connected to excessive time off and active or anticipated FMLA leave, and Plaintiff raised her concerns with Defendant's legal department. Mr. Nesset stated that he wanted Jessie Endress gone and selected the other two Office Manager/HR

Representatives as part of the same RIF, which Plaintiff understood would make the selection appear cleaner, even though those employees also had active or anticipated medical leave. Defendant took no corrective action in response to Plaintiff's complaints.

37. On or about January 17, 2024, Plaintiff learned that Defendant's Vice President of Human Resources had posted a 9-box talent grid for the human resources leadership team. The grid placed all five members of the human resources leadership team, each of whom was over the age of 40, in low-potential boxes, while placing the sole high-potential employee, who was 33 years old, in a high-potential box. Plaintiff reported her findings to Brad Nesset but did not share them with her coworkers. The following day, Defendant's Vice President of Human Resources stated during a conference call that someone had been playing around with the ratings. Four of the five older members of the leadership team later left Defendant, and the fifth worked in Germany under contractual protections that made termination more difficult.

38. Plaintiff became eligible for FMLA leave on or about January 31, 2024. Although Plaintiff needed medical leave to address her serious health condition, she had been unable to take leave earlier because of the

ongoing RIFs and the demands placed on her. Brad Nesset was aware of Plaintiff's cardiac condition, and Plaintiff had informed him that she would need a medical procedure on her heart that was scheduled for March 2024. Plaintiff intended to take a leave of absence for her health condition and, in anticipation of doing so, had begun taking personal belongings home from her office so that it would be cleared when her leave began.

39. On or about February 20, 2024, Plaintiff had an abrupt telephone call with Brad Nesset concerning her performance rating on the HR Dashboard project goal, a goal Mr. Nesset had added during the performance year. Plaintiff disputed the rating and stated, in substance, that even Mr. Nesset, as president, had been unable to obtain the support needed from Oldcastle to get the project running, and questioned how Plaintiff could reasonably have done so. Mr. Nesset was displeased with the exchange and stated that he would think about it.

40. On or about February 21, 2024, Plaintiff began an application for short-term disability and FMLA leave through Unum, Defendant's third-party leave and disability administrator, completing the application in the early morning hours of February 22, 2024. The short-term disability plan under which Plaintiff was covered was CRH Americas, Inc.'s Short Term

Disability plan. At approximately 5:00 p.m. on February 21, Connor Dugosh from Defendant's legal department requested the most recent Older Workers Benefit Protection Act chart from Plaintiff's Human Resources function in connection with the RIF process, and Plaintiff arranged for her Human Resources Manager to send the final chart to him.

41. On or about February 22, 2024, Plaintiff went to the office to return company equipment and to inform Brad Nesset of her disability and leave application. By that time, Plaintiff had removed most of her personal belongings from her office because she intended to take medical leave and wanted the office cleared before doing so. Shortly after Plaintiff arrived, Mr. Nesset came to her office, presented her with a severance agreement, and remarked, 'Really, a medical leave?' Mr. Nesset then escorted Plaintiff out of the office.

42. On or about February 22, 2024, Defendant terminated Plaintiff's employment, effective February 22, 2024. By letter dated February 23, 2024, Defendant confirmed the termination and characterized it as the elimination of Plaintiff's position due to a reduction in force.

43. On or about February 23, 2024, Unum issued a Notice of Eligibility confirming that Plaintiff was eligible for Federal FMLA leave in

connection with a serious health condition. The timing of Plaintiff's termination - immediately after her leave application, after she had informed Mr. Nesset of her need for medical leave and planned cardiac procedure, and shortly after her objections to Defendant's RIF practices - supports Plaintiff's allegations that Defendant terminated her because of her disability and in retaliation for protected activity and for seeking protected medical leave.

44. All employees who were included in the February 2024 reduction in force received their bonuses. Plaintiff was the only such employee who did not receive her bonus, despite Defendant's representation that bonuses would be paid out. At all times relevant herein, Plaintiff was a qualified individual who could perform the essential functions of her position, with or without reasonable accommodation, and Plaintiff performed her job duties satisfactorily. Plaintiff never received a reprimand, disciplinary action, or performance rating below expectations during her employment with Defendant.

45. As a direct and proximate result of Defendant's discriminatory and retaliatory conduct, Plaintiff has been unable to secure comparable employment since her termination despite diligent efforts and has suffered

significant economic hardship, including depletion of her savings and financial losses associated with selling her home and relocating to another state in an effort to start over and mitigate her losses, as well as emotional distress, mental anguish, embarrassment, humiliation, and damage to her professional reputation.

## COUNT I
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
## Disability Discrimination
## 42 U.S.C. §§ 12101-12213

46. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 45 as though fully set forth herein.

47. At all times material herein, Defendant employed Plaintiff and was an "employer" within the meaning of the ADA.

48. At all times material herein, Plaintiff was a qualified individual with a disability within the meaning of the ADA in that she had a physical impairment that substantially limited one or more major life activities and she could perform the essential functions of her position with or without reasonable accommodation.

49. Plaintiff's cardiac condition substantially limited one or more major life activities, including cardiovascular and circulatory function.

50. Defendant knew of Plaintiff's disability, including through Plaintiff's hospitalization and emergency treatment, her return to work following that treatment, and her application for short-term disability and FMLA leave.

51. After Defendant became aware of Plaintiff's disability and her need for disability-related medical leave, Defendant subjected Plaintiff to an adverse employment action by terminating her employment.

52. Defendant took the foregoing action against Plaintiff because of Plaintiff's disability.

53. Defendant's conduct constituted unlawful discrimination against Plaintiff on the basis of disability in violation of the ADA.

54. As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff has suffered damages, including lost wages and benefits, lost earning capacity, emotional distress, mental anguish, humiliation, loss of dignity, and other pecuniary and non-pecuniary losses.

**WHEREFORE**, Plaintiff, CAROLINE D. OCASIO, demands trial by jury on all issues so triable as of right, and respectfully requests judgment against Defendant, MEADOW BURKE, LLC d/b/a LEVIAT, and the following relief:

1. A declaration that Defendant violated the ADA by discriminating against Plaintiff because of her disability;

2. Back pay, front pay, lost benefits, and other equitable and monetary relief sufficient to make Plaintiff whole;

3. Compensatory damages as allowed by law;

4. Pre-judgment and post-judgment interest as allowed by law;

5. Reasonable attorneys' fees, costs, and expenses as allowed by law; and

6. Such other and further relief as the Court deems just and proper.

**COUNT II**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**
**Retaliation**
**42 U.S.C. §§ 12101-12213**

55. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 45 as though fully set forth herein.

56. At all times material herein, Defendant employed Plaintiff and was an "employer" within the meaning of the ADA.

57. Plaintiff engaged in protected activity under the ADA by, among other things, opposing what she reasonably believed to be unlawful disability-based selection of employees for layoff, complaining that

employees were being targeted for layoff because of their disabilities and disability-related medical leave, and requesting and applying for disability-related medical leave for her own serious health condition.

58. Defendant knew of Plaintiff's protected activity.

59. After Plaintiff engaged in protected activity, Defendant subjected Plaintiff to materially adverse action by terminating her employment.

60. The adverse action taken against Plaintiff was materially adverse in that it would dissuade a reasonable employee from engaging in protected activity under the ADA.

61. There is a causal connection between Plaintiff's protected activity and Defendant's materially adverse action, including the close temporal proximity between Plaintiff's application for disability-related leave and her termination the following day.

62. Defendant's conduct constituted unlawful retaliation against Plaintiff in violation of the ADA.

63. As a direct and proximate result of Defendant's retaliatory conduct, Plaintiff has suffered damages, including lost wages and benefits, lost earning capacity, emotional distress, mental anguish, humiliation, loss

of dignity, and other pecuniary and non-pecuniary losses.

**WHEREFORE**, Plaintiff, CAROLINE D. OCASIO, demands trial by jury on all issues so triable as of right, and respectfully requests judgment against Defendant, MEADOW BURKE, LLC d/b/a LEVIAT, and the following relief:

1. A declaration that Defendant violated the ADA by retaliating against Plaintiff for engaging in protected activity;

2. Back pay, front pay, lost benefits, and other equitable and monetary relief sufficient to make Plaintiff whole;

3. Compensatory damages as allowed by law;

4. Pre-judgment and post-judgment interest as allowed by law;

5. Reasonable attorneys' fees, costs, and expenses as allowed by law; and

6. Such other and further relief as the Court deems just and proper.

**COUNT III**
**VIOLATION OF THE**
**AGE DISCRIMINATION IN EMPLOYMENT ACT**
**Age Discrimination**
**29 U.S.C. §§ 621-634**

64. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 45 as though fully set forth herein.

65. At all times material herein, Defendant employed Plaintiff and was an "employer" within the meaning of the ADEA.

66. Plaintiff was a member of the protected class under the ADEA, which protects individuals who are 40 years of age or older from employment discrimination based on age. Plaintiff was 57 years old at the time of her termination.

67. Plaintiff was qualified for her position and performed her job duties satisfactorily.

68. Defendant subjected Plaintiff to an adverse employment action by terminating her employment.

69. Defendant selected Plaintiff and other older workers for layoff because of age and otherwise treated age as a negative factor in the RIF and talent-assessment processes, including through the 9-box ratings alleged above. Defendant also favored significantly younger employees in relevant retention and talent decisions, even though some older employees were retained for other reasons.

70. Defendant took the foregoing action against Plaintiff because of Plaintiff's age.

71. But for Plaintiff's age, Plaintiff would not have been selected for

layoff and terminated.

72. Defendant's conduct constituted unlawful discrimination against Plaintiff on the basis of age in violation of the ADEA.

73. As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff has suffered damages, including lost wages and benefits, lost earning capacity, and other pecuniary losses.

**WHEREFORE**, Plaintiff, CAROLINE D. OCASIO, demands trial by jury on all issues so triable as of right, and respectfully requests judgment against Defendant, MEADOW BURKE, LLC d/b/a LEVIAT, and the following relief:

1. A declaration that Defendant violated the ADEA;

2. Back pay, front pay, lost benefits, and other make-whole relief;

3. Liquidated damages to the extent authorized by the ADEA and supported by the evidence;

4. Pre-judgment and post-judgment interest as allowed by law;

5. Reasonable attorneys' fees, costs, and expenses as allowed by law; and

6. Such other and further relief as the Court deems just and proper.

**COUNT IV**
**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**
**Sex Discrimination**
**42 U.S.C. § 2000e et seq.**

74. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 45 as though fully set forth herein.

75. At all times material herein, Defendant was an employer within the meaning of Title VII.

76. Plaintiff is a female and is a member of a protected class under Title VII.

77. Plaintiff was qualified for her position and performed the duties of her employment satisfactorily.

78. Defendant subjected Plaintiff to an adverse employment action by terminating her employment.

79. Defendant treated Plaintiff and other female employees less favorably than similarly situated male employees by selecting female employees for layoff while retaining male employees, including male employees who had performance issues.

80. Defendant's conduct was because of Plaintiff's sex and violated Title VII.

81. As a direct and proximate result of Defendant's sex discrimination, Plaintiff has suffered damages, including lost wages and benefits, lost earning capacity, emotional distress, mental anguish, humiliation, loss of dignity, and other pecuniary and non-pecuniary losses.

**WHEREFORE**, Plaintiff, CAROLINE D. OCASIO, demands trial by jury on all issues so triable as of right, and respectfully requests judgment against Defendant, MEADOW BURKE, LLC d/b/a LEVIAT, and the following relief:

1. A declaration that Defendant violated Title VII by discriminating against Plaintiff because of her sex;

2. Back pay, front pay, lost benefits, and other equitable and monetary relief sufficient to make Plaintiff whole;

3. Compensatory damages as allowed by law;

4. Pre-judgment and post-judgment interest as allowed by law;

5. Reasonable attorneys' fees, costs, and expenses as allowed by law; and

6. Such other and further relief as the Court deems just and proper.

## COUNT V
## VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT
## Disability Discrimination
## Fla. Stat. §§ 760.01-760.11

82. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 45 as though fully set forth herein.

83. At all times material herein, Defendant was an employer within the meaning of the FCRA.

84. At all times material herein, Plaintiff was a qualified individual with a disability or handicap within the meaning of the FCRA in that she had a physical impairment that substantially limited one or more major life activities and she could perform the essential functions of her position with or without reasonable accommodation.

85. Defendant knew of Plaintiff's disability, including through her hospitalization and emergency treatment, her return to work, and her application for short-term disability and FMLA leave.

86. After Defendant became aware of Plaintiff's disability and her need for disability-related medical leave, Defendant subjected Plaintiff to an adverse employment action by terminating her employment because of her disability.

87. Defendant's conduct constituted unlawful disability discrimination in violation of the FCRA.

88. As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff has suffered damages, including lost wages and benefits, lost earning capacity, emotional distress, mental anguish, humiliation, loss of dignity, and other pecuniary and non-pecuniary losses.

**WHEREFORE**, Plaintiff, CAROLINE D. OCASIO, demands trial by jury on all issues so triable as of right, and respectfully requests judgment against Defendant, MEADOW BURKE, LLC d/b/a LEVIAT, and the following relief:

1. A declaration that Defendant violated the FCRA by discriminating against Plaintiff because of her disability;

2. Back pay, front pay, lost benefits, and other equitable and monetary relief sufficient to make Plaintiff whole;

3. Compensatory damages as allowed by law and within any applicable statutory limits;

4. Pre-judgment and post-judgment interest as allowed by law;

5. Reasonable attorneys' fees, costs, and expenses as allowed by law; and

6. Such other and further relief as the Court deems just and proper.

**<u>COUNT VI</u>**
**VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT**
**Age Discrimination**
**Fla. Stat. §§ 760.01-760.11**

89. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 45 as though fully set forth herein.

90. At all times material herein, Defendant was an employer within the meaning of the FCRA.

91. Plaintiff was 57 years old at the time of her termination and is a member of a class protected against age discrimination under the FCRA.

92. Plaintiff was qualified for her position and performed her job duties satisfactorily.

93. Defendant selected Plaintiff and other older workers for layoff because of age and otherwise treated age as a negative factor in the RIF and talent-assessment processes, including through the 9-box ratings alleged above, while favoring significantly younger employees in relevant retention and talent decisions.

94. Defendant's conduct constituted unlawful age discrimination in violation of the FCRA.

95. As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff has suffered damages, including lost wages and benefits, lost earning capacity, emotional distress, mental anguish, humiliation, loss of dignity, and other pecuniary and non-pecuniary losses.

**WHEREFORE**, Plaintiff, CAROLINE D. OCASIO, demands trial by jury on all issues so triable as of right, and respectfully requests judgment against Defendant, MEADOW BURKE, LLC d/b/a LEVIAT, and the following relief:

1. A declaration that Defendant violated the FCRA by discriminating against Plaintiff because of her age;

2. Back pay, front pay, lost benefits, and other equitable and monetary relief sufficient to make Plaintiff whole;

3. Compensatory damages as allowed by law and within any applicable statutory limits;

4. Pre-judgment and post-judgment interest as allowed by law;

5. Reasonable attorneys' fees, costs, and expenses as allowed by law; and

6. Such other and further relief as the Court deems just and proper.

**COUNT VII**
**VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT**
**Interference**
**29 U.S.C. § 2601 et seq.**

96. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 45 as though fully set forth herein.

97. At all times material herein, Plaintiff was an eligible employee within the meaning of the FMLA.

98. At all times material herein, Defendant was an employer within the meaning of the FMLA.

99. Plaintiff suffered from a serious health condition within the meaning of the FMLA.

100. Plaintiff became eligible for FMLA leave on or about January 31, 2024, and was entitled to take FMLA leave for her serious health condition.

101. On or about February 21, 2024, Plaintiff gave notice of her need for FMLA leave and initiated an application for FMLA leave through Defendant's third-party leave administrator, completing the application in the early morning hours of February 22, 2024.

102. Defendant knew that Plaintiff had requested and was seeking

to exercise her FMLA rights.

103. Defendant interfered with, restrained, and denied Plaintiff's exercise of rights under the FMLA by terminating her employment on or about February 22, 2024, before Plaintiff could take the FMLA leave to which she was entitled.

104. As a result of Defendant's interference, Plaintiff was denied the benefit of protected leave and lost wages, employment benefits, and other compensation.

105. As a direct and proximate result of Defendant's unlawful interference with Plaintiff's FMLA rights, Plaintiff has suffered damages, including lost wages, salary, employment benefits, and other compensation, and is entitled to all damages and equitable relief authorized by the FMLA.

106. Defendant's violation was not in good faith, and Plaintiff is therefore entitled to liquidated damages to the full extent permitted by law.

**WHEREFORE**, Plaintiff, CAROLINE D. OCASIO, demands trial by jury on all issues so triable as of right, and respectfully requests judgment against Defendant, MEADOW BURKE, LLC d/b/a LEVIAT, for damages, equitable relief, liquidated damages, attorneys' fees, costs, interest, and such other relief as the Court deems just and proper under the FMLA.

**COUNT VIII**
**VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT**
**Retaliation**
**29 U.S.C. § 2601 et seq.**

107. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 45 as though fully set forth herein.

108. At all times material herein, Plaintiff was an eligible employee within the meaning of the FMLA.

109. At all times material herein, Defendant was an employer within the meaning of the FMLA.

110. Plaintiff engaged in protected activity under the FMLA by requesting and applying for FMLA leave for her serious health condition.

111. Defendant knew that Plaintiff engaged in protected activity under the FMLA.

112. After Plaintiff engaged in protected activity, Defendant subjected Plaintiff to a materially adverse employment action by terminating her employment.

113. The close temporal proximity between Plaintiff's request for FMLA leave and her termination the following day, together with her supervisor's remark, "Really, a medical leave?", supports a causal

connection between Plaintiff's protected activity and Defendant's adverse action.

114. Defendant retaliated against Plaintiff because she exercised rights protected by the FMLA, in violation of 29 U.S.C. § 2615(a)(2).

115. As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff has suffered damages, including lost wages, salary, employment benefits, and other compensation, and is entitled to all damages and equitable relief authorized by the FMLA.

116. Defendant's violation was not in good faith, and Plaintiff is therefore entitled to liquidated damages to the full extent permitted by law.

**WHEREFORE**, Plaintiff, CAROLINE D. OCASIO, demands trial by jury on all issues so triable as of right, and respectfully requests judgment against Defendant, MEADOW BURKE, LLC d/b/a LEVIAT, for damages, equitable relief, liquidated damages, attorneys' fees, costs, interest, and such other relief as the Court deems just and proper under the FMLA.

**DEMAND FOR TRIAL BY JURY**

Plaintiff respectfully requests a trial by jury.

Date this 19th day of September 2026.

*/s/ Jason W. Imler, Esq.*

Jason W. Imler
Florida Bar No. 1004422
Alberto "Tito" Gonzalez
Florida Bar No. 1037033
**Imler Law**
23110 State Road 54, Unit 407
Lutz, Florida 33549
(P): 813-553-7709
Jason@ImlerLaw.com
Tito@ImlerLaw.com
Ashley@ImlerLaw.com
Tiffany@ImlerLaw.com